PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARCO ANTONIO RODRIGO DE LA TORRE, *Individually and as Executor of the Estate of Deceased Juan Carlos Andrade Rodriguez*, | ) ) ) ) | CASE NO. 4:16CV2004 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| CORRECTIONS CORPORATION OF AMERICA, *et al.*, | ) ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Resolving ECF No. 4] |
| Defendants. | ) | |

Pending is a Rule 12(b)(6)  motion to dismiss filed by Defendant Corrections Corporation

of America ("CCA")[1] and individual Defendants Dr. Jason A. Rupeka, Dr. Armand Minotti, Dr.

David Gabriel, OD, and Danny Hall, P.A. (collectively "Defendants"), seeking dismissal of the

Complaint filed by Plaintiff Marco Antonio Rodrigo De La Torre, individually and as Executor

of the Estate of Deceased Juan Carlos Andrade Rodriguez (collectively "Plaintiffs"). ECF No. 4.

The Court has been advised, having reviewed the record, the parties' briefs and the applicable

law.  For the reasons set forth below, the Court grants the motion in part, and denies in part.

## I. Background

On June 30, 2016, Plaintiffs filed this action in the Mahoning County, Ohio Court of

Common Pleas, seeking compensation for damages sustained from the death of Juan Carlos

Andrade Rodriguez. ECF No. 1-1.  The six-count Complaint alleges claims for negligent

---

[1] The status of Defendant Northeast Ohio Correctional Center is addressed below.

(4:16CV2004)

medical treatment (Count One), negligent medical care (Count Two), loss of consortium (Count

Three), wrongful death (Count Four), survival action (Count Five), and negligent retention and

supervision (Count Six).[2]  *Id.*  Defendants removed the case to this Court on August 10, 2016

pursuant to 28 U.S.C. §§ 1441 and 1446, and based upon diversity jurisdiction under 28 U.S.C. §

1332(a).  ECF No. 1.

Plaintiffs allege that Juan Carlos Andrade Rodriguez—a pre-trial detainee and inmate

who had been in federal custody at the Northeast Ohio Correctional Center ("NEOCC") in

Youngstown, Ohio—died on July 4, 2014 as a result of Defendants' negligent conduct, action,

malfeasance, and decisions regarding his medical treatment for Type I diabetes.  ECF No. 1-1, ¶¶

1- 2.  Specifically, Plaintiffs allege that Defendants failed to properly monitor and treat Mr.

Rodriguez's Type I diabetes while he was in custody at NEOCC from February 19, 2010 through

January 3, 2011.  *See* ECF No. 1-1, ¶ 1.  As a result of Defendants' negligence, Plaintiffs allege

that Mr. Rodriguez was found unresponsive on at last eight occasions, suffered irreversible

blindness, and suffered from other medical ailments including but not limited to unstable blood

sugar, kidney failure, high blood pressure, facial edema, and infections.  *Id.* at ¶ 3.  Moreover,

Plaintiffs allege that Defendants' negligence was the direct and proximate cause of Mr.

Rodriguez's death over three years later on July 4, 2014.  *Id.*  Plaintiffs have styled their

complaint as "an action for wrongful death, medical malpractice, negligent supervision and

---

[2]  In addition to this action, Plaintiffs maintain a Federal Tort Claims Act action.
*See Rodriguez v. United States of America*, Case No. 1:13-CV-01559 (Cleland, J.) (filed
July 18, 2013).

2

(4:16CV2004)

negligent treatment" brought "as a wrongful death claim pursuant to ORC 2152.02 [sic]on behalf of the Estate of Juan Carlos Andrade Rodriguez."  *See* ECF No. 1-1, ¶¶ 1, 5.

## II.  Legal Standard

To survive a Fed. R. Civ. P.12(b)(6) motion to dismiss, the plaintiff's complaint must allege enough facts to "raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Fed. R. Civ. P. 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint requires "further factual enhancement," which "state[s] a claim to relief that is plausible on its face." *Id.* at 557, 570.  A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When a claim lacks "plausibility in th[e] complaint," that cause of action fails to state a claim upon which relief can be granted. *Twombly*, U.S. 550 at 564.

When ruling on a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

3

(4:16CV2004)

### III.  Analysis

A.  <u>Counts One-Three: Negligence & Loss of Consortium</u>

In their motion to dismiss, Defendants argue that Counts One, Two, and Three fail to state a claim because they are medical malpractice claims time-barred by the relevant statute of limitations.  ECF No. 4 at PageID #: 36; ECF No. 6 at PageID #: 65-66.  In opposition, Plaintiffs argue that, "in its entirety," Plaintiffs' Complaint: (1) encompasses the "two different types of *wrongful death suits* related to medical malpractice;" (2) is brought "pursuant to the Ohio *wrongful death medical malpractice statute*;" and (3) is not time-barred pursuant to the two-year statute of limitations for wrongful death suits.  ECF No. 5 at PageID #: 55-56 (emphasis added).

"When a person is killed by the tortious conduct of another, two main causes of action arise from the incident." *Freudeman v. Landing of Canton*, 702 F.3d 318, 332 (6th Cir. 2012) (citing *Thompson v. Wing*, 637 N.E.2d 917, 920 (Ohio 1994)).  First, a claim for malpractice or decedent's personal injury suffered before death survives, and can be brought by the executor or administrator of the decedent's estate in a survival action.  *Freudeman*, 702 F.3d at 332; Ohio Rev. Code Ann. § 2305.21.  Second, a decedent's personal representative may bring a cause of action for wrongful death.  *Freudeman*, 702 F.3d at 332; Ohio Rev. Code Ann. § 2125.01. "Although a survival claim and a wrongful death claim are typically pursued by the same nominal party and must usually be joined in the same action, the Ohio Supreme Court has emphasized that they are separate and independent causes of action." *Freudeman*, 702 F.3d at 333 (citing *Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258, 1262 (2007)).

4

(4:16CV2004)

Ohio law supplies the statute of limitations for the causes of actions. Section 2125.02(D)(1) establishes a two-year limitations period for wrongful death actions. Subject to any applicable exception, the statute of limitations in a survival action is, however, governed by the limiting statute applicable to the underlying tort claim that decedent could have brought while living. Under Section 2305.10, a two-year statute of limitation applies to actions brought under the theory of negligence for bodily injury. Furthermore, although an action may sound under a theory of negligence for bodily injury, Section 2305.113(A) establishes a one-year limitation period for actions brought under a theory of  medical malpractice. *See Rome v. Flower Mem. Hosp.*, 635 N.E.2d 1239, 1241 (Ohio 1994) (explaining "Ordinarily a plaintiff has two years to file a lawsuit for personal injury [pursuant to § 2305.10(A)]. Nevertheless, if the injury is based on a 'medical claim' the plaintiff has one year to file his action [pursuant to §2305.113(A)]."). Moreover, no medical claim may be filed "more than four years after the occurrence of the act or omission" that forms the basis of the medical claim. Ohio Rev. Code Ann. § 2305.113(C)(1).

Section 2305.113 defines a medical claim as "any claim that is asserted in any civil action against a physician, . . . against any employee or agent of a physician, . . . or against a . . . physician assistant, . . .  that arises out of the medical diagnosis, care, or treatment of any person." The statute provides that a medical claim also includes derivative claims for loss of consortium. Such derivative claims may arise from the plan of care or treatment of a person, or result from acts or omissions in providing medical care. Ohio Rev. Code Ann. § 2305.113(E)(3).

In order to determine the applicable statute of limitations in Plaintiffs' case, the Court must  "look at the true nature or subject matter of the act or acts giving rise to the complaint."

5

(4:16CV2004)

*Blanton v. Alley*, Case No. 02CA685, 2003 WL 21152546, ¶ 36 (Ohio Ct. App. 2003) (citing

*Vandiver v. Morgan Adhesive Co.*, 710 N.E.2d 1219, 1221 (Ohio Ct. App. 1998); *see also*

*Feeney v. Eschack*, 718 N.E.2d 462, 464 (Ohio Ct. App. 1998); *Doe v. First United Methodist*

*Church*, 629 N.E.2d 402 (Ohio 1994) (abrogated on other grounds).

i. Count One - Negligence (Medical Treatment)

From the face of the Complaint, it appears that the true nature and subject matter of the

acts giving rise to Plaintiffs' claims in Count One are medical malpractice claims governed by

Section 2305.113.[3]  In that Count, Plaintiffs allege that Defendants breached their duty to

properly treat Mr. Rodriguez (¶ 13) when Defendants: ignored medical observations (¶ 14); failed

to properly diagnose and treat medical conditions (¶ 15); and, failed to properly treat or diagnose

Mr. Rodriguez (¶ 16).  ECF No. 1-1.  Plaintiffs also allege that Defendants negligently and

carelessly failed to provide treatment including failure to: obtain endocrinologist consultation (¶

21); monitor Mr. Rodiguez's condition (¶ 22); perform necessary treatments (¶ 24); address Mr.

Rodriguez's treatable medical conditions (¶ 25); and, perform necessary and appropriate tests and

procedures to treat Mr. Rodriguez (¶ 26).  ECF No. 1-1.  Consequently, Count One falls squarely

within the definition of "medical claims" under Section 2305.113 and is governed by Ohio's

four-year limitation for bringing medical malpractice claims.  Plaintiffs filed their Complaint on

June 30, 2016—more than five years after Mr. Rodriguez left the custody of NEOCC and

---

[3] In their opposition, Plaintiffs have provided a more detailed factual account of
Mr. Rodriguez's medical history, prosecution, and medical treatment while at the
NEOCC.  The Court is limited to that in the pleadings and those documents attached
thereto.

(4:16CV2004)

suffered Defendants' alleged improper medical treatment.[4]  Accordingly, Count One is time-barred and dismissed with prejudice.

### ii. Count Two - Negligence (Medical Care)

For reasons similar to those articulated above, the Court finds that Count Two is also a medical malpractice claim governed by Section 2305.113.  In Count Two, Plaintiffs allege that Defendants breached their duty to properly monitor Mr. Rodriguez for the "known risks of failure to treat his [medical] condition" (¶ 32) when Defendants negligently and carelessly failed to: inform Mr. Rodriguez and his family that "damage was occurring to his body aggravating his improperly treated diabetic condition" (¶ 35); disclose other alternative treatments (¶ 36); and, order and/or perform necessary and appropriate tests and procedures (¶ 37).  ECF No. 1-1.  As in Count One, Count Two also falls squarely within the definition of  "medical claims" and is governed by Section 2305.113's four-year limitation for bringing medical malpractice claims.  Accordingly, Count Two is time-barred and dismissed with prejudice.

### iii. Count Three - Loss of Consortium

In Count Three, Plaintiffs allege that Defendants' acts of negligence as described in Counts One and Two, were the direct and proximate cause of their "loss of companionship, society, love and affection" of Mr. Rodriguez upon his death.  ECF No. 1-1, ¶ 43.  Having found that Counts One and Two fall within the definition of medical claims under Section 2305.113,

---

[4]  The Court also takes notice that Plaintiffs' pending action in Case No. 1:13-CV-01559 that is based on the same set of facts and occurrences was initially filed on July 18, 2013— three years earlier than their state law claims.  *See* Complaint, ECF No. 1 in Case No. 1:13-CV-01559.

(4:16CV2004)

the Court also finds that Count Three is a derivative claim for loss of consortium under Ohio's

medical malpractice statute.  As such, Count Three is also governed by Section 2305.113's four-

year limitation.  Accordingly, Count Three is time-barred and dismissed with prejudice.

      B. Count Four: Wrongful Death

      As discussed above, Count Four is an independent action brought pursuant to Ohio's

wrongful death statute, Section 2125.01.  *Freudeman*, 702 F.3d at 332 (citing *Peters v. Columbus*

*Steel Castings Co.*, 873 N.E.2d 1258, 1262 (Ohio 2007)).  In their motion to dismiss, Defendants

contend that Count Four of Plaintiffs' Complaint fails to state a claim because Plaintiffs do not

allege a plausible theory of proximate cause given that Mr. Rodriguez's death occurred "more

than three and half years after he was under Defendant's custody and control."  ECF No. 4 at

PageID #: 43-45; ECF No. 6 at PageID #: 69-71.  Defendants also argue that Count Four must be

dismissed because Plaintiffs failed to submit an affidavit of merit that complies with the

requirements of Ohio Civ. R. 10(D)(2).  ECF No. 6 at PageID #: 67-69.  In opposition, Plaintiffs

argue that proximate cause is an issue of merit that is not properly before the Court in a motion to

dismiss, and that Defendants may present this argument on summary judgment if it is supported

by evidence uncovered during discovery.  ECF No. 5 at PageID #: 61.  Plaintiffs also contend

that their Complaint meets the appropriate pleading standard pursuant to Ohio law.  Furthermore,

Plaintiffs maintain that an adequate affidavit of merit was provided or, in the alternative,

Plaintiffs request the Court grant leave of sixty (60) days to provide an updated affidavit of merit.

ECF No. 5 at PageID #: 59-60.

8

(4:16CV2004)

Under Ohio law, the elements of a wrongful death claim are "(1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of the duty and the death." *Collins v. Sotka*, 692 N.E.2d 581, 588-89 (Ohio 1998). Mr. Rodriguez was in federal custody at NEOCC.  Plaintiffs allege a factual account of the medical ailments suffered by Mr. Rodriguez and the number of occasions he was found unresponsive while in custody at NEOCC.  Plaintiffs allege that while in custody, Mr. Rodriguez had already begun to experience irreversible damage to his health and body, including permanent blindness. Plaintiffs allege that the irreversible damage to Mr. Rodriguez body and health ultimately led to his early demise.  Plaintiffs attached to their complaint a letter from Dr. Mark Shoag, M.D. explaining the nature of Mr. Rodriguez's medical condition and the appropriate standard of care that Plaintiffs allege was breached.  *See* Dr. Shoag's Letter, ECF No. 1-1 at PageID #: 17-18. Viewing these allegations in a light most favorable to Plaintiffs, it is plausible that Defendants breached their duty by failing to provide the appropriate standard of medical care and treatment to Mr. Rodriguez over a ten-month period; that Defendants breached their duty because they were aware of the demise of Mr. Rodriguez's health and did not take appropriate measures to avoid further damage to his health; and that said damage was irreversible causing Mr. Rodriguez death within a few years of his release.  Plaintiffs need only plead, not prove, proximate cause at this early stage.  To counter this point, Defendants have directed the Court to case law that is factually distinct and that was decided on summary judgment after some discovery or evidentiary finding.  Therefore, the Court finds that Plaintiffs sufficiently allege a cause of action for

(4:16CV2004)

wrongful death.  Whether Plaintiffs can prove their theories, or Defendants can prove otherwise, is not before the Court at this time.

Moreover, this Court finds it unnecessary to address the adequacy of Dr. Shoag's Letter as an affidavit of merit pursuant to Ohio Civ. R. 10(D)(2).  Rule 10(D)(2) applies to medical claims brought pursuant to Ohio's medical malpractice statute, Section 2305.113, and is not applicable to Plaintiffs' wrongful death claim.  Accordingly, as to Count Four, Defendants' motion to dismiss is denied.

C. Count Five: Survival Action as to Counts One and Two

Because Counts One and Two provide the sole basis for Plaintiffs' survival action against individual Defendants for the medical injuries and damages allegedly sustained by Mr. Rodriguez before his death, Count Five of Plaintiffs' Complaint fails to state a claim upon which relief can be granted.  Accordingly, Count Five is dismissed with prejudice.

D. Count Six: Negligent Retention & Supervision

In their motion to dismiss, Defendants argue that Count Six fails to state a claim because it was not plead with particularity as required under both Ohio and federal pleading standards. ECF No. 4 at PageID #: 45-46; ECF No. 6 at PageID #: 72-73.  Specifically, Defendants contend that Plaintiffs failed to "allege any facts from which the Court could plausibly find that Defendants knew or should have known about their employees' alleged tortious propensities." ECF No. 4 at PageID #47.  Defendants also characterize Count Six as a medical claim that is time-barred.  ECF No. 4 at PageID #: 39-40.  In opposition, Plaintiffs contend that, the State of Ohio does not require fact pleading and that Plaintiffs properly allege all of the elements of their

10

(4:16CV2004)

claim for negligent retention and supervision.  ECF No. 5 at PageID #: 59-60.  Moreover,

Plaintiffs' argue that specific facts "will be developed in the discovery process through the taking

of depositions and responding to written discovery requests."  *Id.*

"Under Ohio law, a plaintiff asserting a negligent supervision [and/or retention] claim

must show (1) the existence of an employment relationship; (2) the employee's incompetence; (3)

the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or

omission causing the plaintiff's injuries; and (5) a causal link between the employer's negligence

in hiring, supervising, and retaining the employee and the plaintiff's injuries."  *Alleman v. YRC,*

*787 F. Supp. 2d 679, 683 (N.D. Ohio 2011)* (citing *Lehrner v. Safeco Ins./Am. States Ins. Co.,*

*872 N.E.2d 295, 305 (Ohio Ct. App. 2007)*).  Furthermore, it is well established under Ohio law

that:

> [t]he legal viability of [plaintiff's] claims of negligent [supervision]
> and retention [are] dependent upon a showing that [the employee's]
> conduct was foreseeable. . . . [T]he conduct was foreseeable to the
> [employer] only if it knew (or should have known) of [the
> employee's] propensity to engage in similar criminal, tort[i]ous, or
> dangerous conduct.

*Browning v. Ohio State Hwy. Patrol,* 786 N.E.2d 94, 103 (Ohio Ct. App. 2003) (citing *Byrd v.*

*Faber,* 565 N.E.2d 584 (Ohio 1991)).  *See also* *Cole v. Am. Cmty. Servs., Inc.,* No. 2:04-CV-738,

2006 WL 2987815, at *5 (S.D. Ohio Oct. 17, 2006) ("A plaintiff's failure to show an employer

had notice, actual or constructive, of its employee's tortious or criminal behavior or

incompetence, is []fatal to a negligent supervision [and retention] claim."), *aff'd,* 243 F. App'x

158 (6th Cir. 2007).  To survive a motion to dismiss, Plaintiff must plead enough factual content

to allow the court to draw the reasonable inference.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

11

(4:16CV2004)

In Count Six, Plaintiffs allege that individual Defendants Dr. Jason A. Rupeka, Dr. Armand Minotti, Dr. David Gabriel, OD, and Danny Hall, P.A. were employees of Defendant CCA (¶ 61).  Plaintiffs also allege that individual Defendants were incompetent and negligent in providing medical care (¶ 62), and that the individual Defendants' incompetence and negligence in providing medical care to Mr. Rodriguez caused his injuries and death (¶ 67).  ECF No. 1-1. In addition, Plaintiffs allege that CCA had a duty to constantly monitor inmates in their custody to ensure their safety (¶ 64) and breached their duty to monitor and supervise individual Defendants (¶ 65).  *Id.*  Moreover, Plaintiffs incorporate all prior factual allegations set forth in the Complaint into Count Six (¶ 60).  *Id.*  These factual allegations include: Mr. Rodriguez was incarcerated at NEOCC over a ten-month period (¶ 2); Mr. Rodriguez was found unresponsive on at last eight occasions; suffered irreversible blindness; and suffered from other medical ailments including but not limited to unstable blood sugar, kidney failure, high blood pressure, facial edema, and infections (¶ 3).  *Id.*  It is undisputed that Mr. Rodriguez was in the custody at NEOCC from February 19, 2010 through January 3, 2011.  *Id.*

The Court finds Defendants' argument that Count Six is a medical claim unavailing. Plaintiffs' claim for negligent retention and supervision attaches to Defendant CCA —an entity and employer of physicians and physician assistants against which a medical claim pursuant to Section 2305.113 would not.

Despite surviving that challenge, the Court finds that Plaintiffs have not pleaded sufficient factual allegations of CCA's actual or constructive knowledge as to individual Defendants' tortious conduct for the Court to draw a reasonable inference that Defendant CCA is

12

(4:16CV2004)

liable for negligent supervision and retention.  Plaintiffs sufficiently allege Defendant CCA had a

duty to "constantly monitor" inmate safety.  Yet, only restate the elements of a negligent

supervision and retention and fail to allege facts that support a reasonable inference that this duty

had in some way given Defendant CCA knowledge, actual or constructive, of individual

Defendants alleged negligent medical treatment and care of Mr. Rodriguez.  Accordingly, Count

Six of Plaintiffs' complaint is dismissed without prejudice to it being repaired should the case be

reopened.

      E. Defendant NEOCC

      "NEOCC is a non-jural entity that does not have a separate legal existence."  *See Dimora*

*v. Ne. Ohio Corr. Ctr.*, No. 4:14CV1221, 2015 WL 1119768 (N.D. Ohio Mar. 11, 2015) (J.

Pearson).  "NEOCC is the name of the prison facility located in Youngstown, Ohio that is owned

and operated by CCA."  *Id.*; *see also*  ECF No. 4 at PageID #: 46.  It "is not *sui juris* and does not

have the authority to sue or be sued."  ECF No. 4 at PageID #: 46.[5]  Accordingly, the Court

dismisses this case as to Defendant Northeast Ohio Correctional Center.

**IV. CONCLUSION**

      For the foregoing reasons, Defendants motion to dismiss is granted as to Counts One,

Two, Three, Five, and Six of Plaintiffs' Complaint.  Defendants motion to dismiss is denied as to

Count Four Wrongful Death.

      Accordingly,

---

    [5]  Business name searches on the Ohio Secretary of State's website
(http://www.sos.state.oh.us/SOS/) for "Northeast Ohio Correctional Center" and
"NEOCC" returned no results.

(4:16CV2004)

- Counts One, Two, Three, and Five of Plaintiffs' Complaint are dismissed with prejudice.

- Count Six is dismissed without prejudice to it being refiled within 14 days of the case being reopened. [6]

- Plaintiffs' request for leave of sixty (60) days to provide an updated affidavit of merit is denied as unnecessary.

- Defendant NEOCC is dismissed from this action.


IT IS SO ORDERED.


  November 23, 2016                                  /s/ Benita Y. Pearson
Date                                               Benita Y. Pearson
                                                   United States District Judge

---

[6] *See* separately filed motion administratively closing case.

14