PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MARCO ANTONIO RODRIGO DE LA TORRE, *Individually and as Executor of the Estate of Deceased Juan Carlos Andrade Rodriguez*, | ) ) ) ) ) | CASE NO. 4:16CV2004 |
| Plaintiff, | ) ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) ) | |
| CORRECTIONS CORPORATION OF AMERICA, *et al.*, | ) ) ) | **MEMORANDUM OF OPINION AND ORDER** [RESOLVING ECF NO. 23] |
| Defendants. | ) | |

Pending is a Rule 12(b)(6) motion for partial dismissal filed by Defendant Corrections Corporation of America ("CoreCivic")[1] and individual Defendants Dr. Jason A. Rupeka, Dr. Armand Minotti, Dr. David Gabriel, OD, and Danny Hall, P.A. (collectively "Defendants"), seeking dismissal of Plaintiff Marco Antonio Rodrigo De La Torre, individually and as Executor of the Estate of Deceased Juan Carlos Andrade Rodriguez's negligent retention and supervision claim. ECF No. 23. Plaintiff has responded. ECF No. 25. Defendants replied. ECF No. 26. For the reasons that follow, the Court grants the motion.

## I. Background

Plaintiff originally filed this action in the Mahoning County Court of Common Pleas. Defendants removed the action (ECF No. 1) and filed a motion to dismiss (ECF No. 4). The

---

[1] Corrections Corporation of America re-branded as CoreCivic. Therefore, the Court will refer to CoreCivic as such.

(4:16CV2004)

Court granted the motion, in part, and denied the motion, in part. ECF No. 10. Subsequently, Plaintiff filed a First Amended Complaint. ECF No. 21. The First Amended Complaint contains two counts: (1) a wrongful death claim and (2) a negligent retention and supervision claim. Defendants' motion seeks dismissal of Count II, the negligent retention and supervision claim.

Plaintiff alleges that Juan Carlos Andrade Rodriguez, an inmate at Northeast Ohio Correctional Center from February 19, 2010 to January 3, 2011, died due to Defendants' failure to monitor his type one diabetes properly during his stay at NEOCC. *Id*. at PageID #: 152-53. Rodriguez was arrested on February 19, 2010. *Id.* at PageID #: 154. Plaintiff alleges that, between February 20, 2010 and February 26, 2010, blood glucose readings that prison staff took of Rodriguez ranged from 119 to 600. Plaintiff avers that the American Diabetes Association advises that blood glucose readings should range between 80-130. *Id.* at PageID #: 154-55.

Plaintiff alleges that, during Rodriguez's 318-day stay at NEOCC, he was found unresponsive on at least eight occasions and that he spent approximately 200 days in medical isolation. *Id*. at PageID #: 155-56. Additionally, a few weeks after his arrival, Rodriguez was diagnosed with "severe diabetic retinopathy and micro aneurysms," and, on March 10, 2010, he began reporting medical issues that included vision problems. *Id*. at PageID #: 156. Plaintiff alleges, however, that Rodriguez did not see an eye specialist until May 19, 2010, and that he did not receive eye surgery until November 23, 2010 and December 9, 2010. *Id*. at PageID #: 156. Moreover, Plaintiff alleges that issues related to Rodriguez's kidneys went undiscovered and untreated until Rodriguez went to St. Elizabeth's Hospital after being found unresponsive. *Id*. at

(4:16CV2004)

PageID #: 156. Plaintiff further alleges that Defendants failed to provide Rodriguez with diabetic meals and snacks. *Id.*

Plaintiff alleges that the Immigrations Customs Enforcement officers that transported Rodriguez back to Mexico at the end of his sentence received the following special instruction: "27 year old Hispanic male with unstable blood sugars, kidney failure, high blood pressure, visual impairment, and infectious diarrhea, along with facial and leg/fell swelling." *Id*. at PageID #: 157.

Rodriguez died on July 4, 2014. *Id.* Plaintiff alleges that, while incarcerated, Rodriguez only received blood glucose checks two times a day, even though the discharge papers from St. Elizabeth's Hospital ordered five blood glucose checks a day. *Id.* Plaintiff alleges that twice-a-day-monitoring and the failure to provide him with a glucometer violated the Bureau of Prisons' suggested procedure of three checks a day, plus self-monitoring through a glucometer. *Id.* at PageID #: 157-58.

Plaintiff alleges that the Bureau of Prisons ended its contract with CoreCivic at NEOCC in late 2014. *Id*. at PageID #: 160. Plaintiff further alleges that this came after the American Civil Liberties Union of Ohio urged the Bureau of Prisons to end the contract due to inadequacies in the health care inmates received at NEOCC. *Id.* This purported lack of medical care served as one of the reasons the Bureau of Prisons ended its contract with CoreCivic. *Id*.

## II. Legal Standard

To survive a Fed. R. Civ. P.12(b)(6) motion to dismiss, the plaintiff's complaint must allege enough facts to "raise a right to relief above the speculative level." *Ass'n of Cleveland*

3

(4:16CV2004)

*Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Fed. R. Civ. P. 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint requires "further factual enhancement," which "state[s] a claim to relief that is plausible on its face." *Id.* at 557, 570. A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a claim lacks "plausibility in th[e] complaint," that cause of action fails to state a claim upon which relief can be granted. *Twombly*, U.S. 550 at 564.

When ruling on a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### III.  Discussion

Defendants seek dismissal of Count II of Plaintiff's Amended Complaint on two grounds: (1) that the statute of limitations bars the claim and (2) that Plaintiff has failed to allege facts to show Defendants negligently retained or supervised their employees. ECF No. 23.

**A.  Statute of Limitations**

4

(4:16CV2004)

Defendants contend that R.C. § 2305.10 serves as the statute of limitations for Plaintiff's negligent retention and supervision claim, and that R.C. § 2305.10 contemplates a two-year limitation period from when the injury or loss to property occurs. ECF No. 23 at PageID #: 173. In this case, that would mean that the cause of action accrued no later than January 3, 2011, because Rodriguez was in prison when his injuries occurred. *Id.* at PageID #: 174. In response, Plaintiff does not dispute that R.C. § 2305.10 controls, but rather, he argues that the negligent supervision claim is tied to the wrongful death claim. ECF No. 25 at PageID #: 183-84. This argument urges that the two-year limitation period on the negligent supervision claim begins to run at the same time as the wrongful death claim.

The Ohio Supreme Court has held that "[g]enerally, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Norgard v. Brush Wellman, Inc.*, 95 Ohio St.3d 165, 766 N.E.2d 977, ¶ 8 (Ohio 2002) (citation omitted). The discovery rule provides an exception to this general rule, and the discovery rule provides that the statute of limitations does not begin to run until the plaintiff discovered or should have discovered that he or she suffered an injury from defendant's wrongful conduct. *Id.* (citation omitted).

Additionally, when reviewing the timeliness of a wrongful death action, the Ohio Supreme Court held that the expiration of the statute of limitations period for a medical malpractice action does not mean that a wrongful death action is necessarily untimely. *Klema v. St. Elizabeth's Hospital of Youngstown*, 170 Ohio St. 519, 521, 166 N.E.2d 765 (Ohio 1960). The Ohio Supreme Court held that the two actions are distinct, as the medical malpractice claim

(4:16CV2004)

deals with a wrong to the injured person and the wrongful death claim concerns the wrong to the decedent's beneficiaries. *Id*. (citation omitted). Similarly, the Ohio Sixth District Court of Appeals held that a wrongful death action commenced within two years of the decedent's death was timely, even though the decedent suffered the injury twelve years prior to his death, and therefore, would have been unable to bring a personal injury action. *DeHart v. Ohio Fuel Gas Co.*, 84 Ohio App. 62, 85 N.E.2d 586 (Ohio Ct. App. 1948).

In this case, Count II began to accrue upon Rodriguez's release from prison at the latest. Although *Klema* and *DeHart* focus on the issue from the perspective of wrongful death claims, they show that wrongful death actions do not affect the statute of limitations on other claims. Therefore, the *Norgard* rule applies, and Rodriguez's claim began to accrue at the time of injury. Even assuming the discovery rule controlled, Rodriguez should reasonably have discovered that Defendants' actions fell below the purported medical standards well before his death in 2014. Moreover, the negligent supervision claim, much like the medical malpractice claim in *Klema*, addresses an injury to Rodriguez, whereas the wrongful death claim concerns an injury suffered by Rodriguez's beneficiaries.

Plaintiff's argument that Counts I and II share the same statute of limitations period fails. The two counts address different injuries. Therefore, each has its own statute of limitations calculation. Defendants' argument on Count II is well-taken. The two-year window to bring the claim has expired.

**B. Failure to Allege Sufficient Facts**

(4:16CV2004)

Because Count II is barred by the statute of limitations, the Court declines to address Defendants' second argument.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss Count II. Count II is hereby dismissed.

Defendants shall file an Answer within seven days of this Order. The Court notes that Defendants have failed to comply with the Court's order that Defendants file an answer regardless of the intent to file a motion to dismiss. [ECF No. 7 at PageID #: 80](). Counsel for both parties are admonished to take better care to comply with the Court's orders. Any additional failure to comply will not be tolerated.

IT IS SO ORDERED.

| | |
|---|---|
| December 22, 2017 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |